Burket, C. J.
The question is not as to the motive, fraud or malice which may have induced the oil company to drill the wells sought to be én- ' joined. The only question of practical importance is, had the oil company the legal right to drill the wells ?
When a person has the legal right to do a certain' act, the motive with which it is done is immaterial.
The right to acquire, enjoy and own property, carries with it the right to use it as the owner pleases, so long as such use does not interfere with the legal rights of others.
To drill an oil well near the line of one’s land, can not interfere with the legal rights of the owner of the adjoining lands, so long as all operations are confined to the lands upon which the well is drilled. Whatever gets into the well, belongs to the owner of the well, no matter where it came from. In such cases the well and its contents *328 belong to the owner or lessee of the land, and no one can tell to a certainty from whence the oil, gas or water which enters the well came, and no legal right as to the same can be established or enforced by an adjoining- land owner.
The right to drill and produce oil on .one’s own land is absolute and can not be supervised or controlled by a court, or an adjoining land owner. So long as the operations are legal, their reasonableness can not be drawn in question.
As was pointed out in Letts v. Kessler, 54 Ohio St., 73, it is intolerable that the owner of real property, before making improvements on his own lands, should be compelled to submit to what his neighbor, or court of equity might regard as a reasonable use of his property.
Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of that tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property, the property of the person into whose well it came. And this is so whether the oil moves, percolates, or exists in pools or deposits. In either event, it is property of, and belongs to, the person who reaches it by means of a well, and severs it from the realty and converts it into personalty.
While it is generally supposed that oil is drained into wells for a distance of several hundred feet, the is matter somewhat uncertain, and no right of *329 sufficient weight can be founded upon such uncertain supposition, to overcome the well-known right which every man has to use his property as he pleases, so long he does not interfere with the legal rights of others.
Protection of lines of adjoining lands by the drilling of wells on both sides of such lines, affords an ample and sufficient remedy for the supposed grievances complained of in the petition and supplemental petition, without resort to either an injunction or an accounting.
The case of Coal Company v. Tucker, 48 Ohio St., 41, and Collins v. Chartiers Valley Gas Company, 131 Pa. St., 143, and other like cases in which some harmful substance was sent, conveyed or caused to go from the premises .of one to the premises of another, have no application here, because in this case, nothing reached the plaintiff’s lands from the premises of the defendant, and the only complaint is, that the oil company soused its own premises as to secure and appropriate to its own use, that which came into its lands by percolation, or by flowing through, unknown natural underground channels. This it had a right to do. While the drilled oil well is artificial, the pores and channels through which the oil reached the bottom of the well, are natural.

Judgment affirmed.